IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff,*<br><br>vs.<br><br>AMANDA DALE TRULL,<br><br>    *Defendant.* | DOCKET NO. 1:20-CR-60<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR NONGUIDELINE SENTENCE** |

Defendant, Amanda Dale Trull, by and through her counsel of record, Assistant Federal Public Defender Mary Ellen Coleman, hereby submits her position regarding the 18 U.S.C. § 3553(a) sentencing factors. Ms. Trull's sentencing position is based on the attached sentencing memorandum, exhibits, and any further evidence and argument that may be presented at sentencing.

Respectfully submitted:

s/ Mary Ellen Coleman
Mary Ellen Coleman
NC Bar 45313
Assistant Federal Public Defender
Office of the Federal Public Defender for the
Western District of North Carolina
1 Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992 Phone
(828) 232-5575 Fax
Mary_Ellen_Coleman@fd.org

Date: October 25, 2021

1

**MEMORANDUM**

Defendant, Amanda Dale Trull, through undersigned counsel, hereby submits the following information for this Honorable Court to consider in fashioning a sentence which is sufficient but not greater than necessary under 18.U.S.C. § 3553(a). Ms. Trull is before this Court having pled guilty to one count of Conspiracy to Possess with Intent to Distribute MDMA and one count of Possession with the Intent to Distribute MDMA both in violation of in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C). A Final Presentence Investigation Report ("PSR") was prepared on September 11, 2020 (Doc.19). The PSR calculates an advisory guideline range of 108 to 135 months based on a total offense level of 31 and a criminal history category of I. (PSR ¶ 61).

Ms. Trull is requesting this Honorable Court grant a departure, or in the alternative a variance, in her case to a sentence of 30 months of incarceration followed by supervised release. This request is due to her personal history and potential for rehabilitation in a community setting as evidenced by her extraordinary post offense rehabilitation.

    **I.**    **PERSONAL CHARACTERISTICS AND NATURE OF OFFENSE**

Amanda Trull is a thoughtful and intelligent woman who has spent the last four years proving that she is capable of overcoming her mistakes and living a law-abiding, drug free, lifestyle. When observing Amanda today, it is hard to understand why she made the reckless choices that she did at the time of this case. She has very little criminal history, has spent no time in custody prior to this case, has a consistent history of employment, and has a close relationship with her mother, whom she lived with in the years following her release on bond on the related state charges to this case. She does not have a history of violence, weapons, or any harmful behavior towards others.

A closer look at Amanda's personal history reveals a significant trauma in her adolescence that caused permanent damage to family relationships and has had an emotional impact on her behavior throughout her lifetime. PSR ¶¶ 47-49. This trauma has at times manifested in substance abuse and self-harming actions. PSR ¶¶ 48, 49, 51, 52. Research suggests that there is a high incidence of self-injurious thoughts and behaviors among survivors of the type of trauma Ms. Trull endured. Some victims of trauma use self-harm as a way to cope with emotional pain and to manage the tension and anxiety associated with remembering a traumatic event. Additionally, the type of abuse Amanda suffered is often thought to be a precursor to substance abuse and risk taking behavior. Records reflect that in her mid-teens, Amanda began drinking heavily and injuring herself. The use of alcohol to cope with mental health issues led to poor judgment and poor decision-making. This behavior culminated in a hospitalization in the fall of 2006, and her only prior conviction, a DWI arrest, in January of 2007. PSR ¶¶ 37, 49, 51.

Amanda's past gives both insight into why such a bright individual may be behave in ways contrary to her best interest, but importantly, it also provides a window into her resilience and capacity for change when an intervening action into that behavior takes place. As the PSR notes, Amanda waived counsel for her prior DWI conviction in 2007 and pled guilty to the charge. PSR ¶ 37. When asked why she would waive representation by an attorney, Amanda explained that she knew she was guilty and wanted to take responsibility. She didn't see the need for an attorney when she wanted to admit what she'd done. The court file on this case reflects that she completed 24 hours of community service within 30 days of her sentencing, completed short-term alcohol treatment, and ultimately successfully completed her probationary sentence. Amanda has shown in the past that she is capable of reflecting on and adjusting her

behavior to atone for her actions when she has gotten off track.

Amanda makes no excuses for her actions in the present case and she has done everything she can to accept responsibility. It is still relevant to place Amanda's actions in context with her state of mind at the time of the offense in order to help determine what contributed to and may prevent this behavior in the future. During the course of the offense conduct in this case, Amanda was using the drug "GHB" regularly. Since it was first synthesized in the 1960s, gamma-hydroxybutyrate acid (GHB) has been regularly used for different therapeutic purposes. Over the last three decades, however, the unique profile of GHB, combining stimulant and sedative effects, has contributed to its appeal as a recreational drug. The appealing effects of the drug start with euphoria and relaxation, readily evolving into a state of sedation and altered consciousness when higher doses are used. Little is known about the effects of chronic recreational GHB use on brain structure. However, impulsivity is a common comorbidity of substance use disorders. GHB use can lead to tolerance and dependence. After sudden cessation or reduction of intensive GHB use, a severe withdrawal syndrome may occur with symptoms varying from tremor, anxiety and agitation to autonomic instability, hallucinations and delirium.

Amanda met the individual who introduced her into this conspiracy through her purchase and use of GHB. She believes her drug use at the time contributed to her poor decision-making and recklessness. It is clear that substance abuse has been a contributing factor to her wrongful conduct. It is equally clear that her substance abuse has been linked to her traumatic experiences during her adolescence. What is encouraging is that both of these issues may be mitigated through counseling and treatment, which can lessen the likelihood of Amanda reoffending.

As will be further detailed below, since her arrest in this case, Amanda has focused her

4

Case 1:20-cr-00060-MR-WCM   Document 26   Filed 10/25/21   Page 4 of 11

efforts on adjusting her behavior and atoning for her actions. Like in the past, the intervention of her arrest in this case caused her to reflect upon and change her behavior. Reflection and introspection has been an important aspect of her rehabilitation. She ceased the use of illegal drugs in 2017. She feels that a huge weight has been lifted from her now that her illegal behavior has ended. Now she can put all of her efforts into moving forward in her life.

**Arrest on State Charges and Post Arrest Rehabilitation**

Amanda Trull was arrested on related state charges to this case on January 19, 2017, over four and one half years ago. She remained in state custody until September 11, 2017, at which time she was released on bond with conditions. She was given a unique opportunity to prove that she was a responsible citizen for almost three years. She took advantage of that opportunity and proved that she is remorseful and capable of redemption.

Prior to her arrest she had lived independently. Upon her release in 2017, she went to live with her mother and remained there until her plea of guilty to the federal Information in 2020. Upon her release on this case, she intends to return again to reside at her mother's house. They have grown closer and she has helped her mother with medical issues related to her eyesight. Amanda's mother remains supportive and has provided a letter for the Court's consideration. Exhibit 1. Amanda was initially placed on electronic monitoring with Buncombe County. She was given a pretrial services officer whom she would contact every Monday. After ten months of successful supervision, she was taken off of electronic monitoring and placed on a curfew. Her state court charges were scheduled every two months and she appeared in court as required throughout this time period.

For almost three years, from September 11, 2017, until her plea of guilty on the federal Information on July of 10, 2020, Amanda stayed clean of any drug use, maintained employment,

maintained a consistent residence with her mother, and stayed in contact as directed with her pretrial officer, her state attorney, and undersigned counsel. She is likely to have her same employment when she is eventually released. She was a "homebody". Knowing that there would be eventual consequences to her actions, she saved up the money from her job in order to support herself while she was in custody to not be a burden on her mother. She picked up no new charges and never violated the terms of her release. In July of 2020, she agreed to plead by Information in this case and came to court when summoned, knowing that her plea would result in her immediate incarceration for a substantial period of time.

Amanda came into custody in 2020 as the global COVID-19 pandemic was escalating and has been housed at the McDowell County Jail for over a year. Initially she was "locked down" all but 45 minutes twice per week due to COVID restrictions. During a portion if this time, the inmates were not even allowed to receive outside reading materials. Amanda has been undeterred by the conditions and is a model inmate who has tried to make positive use of her time in custody. Over the course of the past year, the jail staff have been so impressed by her behavior that as COVID restrictions have eased, Amanda has been placed in the position of a trustee in the women's pod. For the last seven months she has been responsible for routine housekeeping tasks and cleaning. She has proven herself so trustworthy and responsible that she was essentially given a job and a leadership role within the jail.

Amanda has taken responsibility for her actions and become a productive member of society. She has proven over the course of the last four years that she is capable of leading a stable, law-abiding lifestyle, and is not a danger to the community. She has every intention and the potential to never place herself in this position again.

6

Case 1:20-cr-00060-MR-WCM   Document 26   Filed 10/25/21   Page 6 of 11

## II. DEPARTURE AND/OR VARIANCE

In determining the particular sentence to be imposed, 18 U.S.C. § 3553(a)(1) directs the Court to consider the "history and characteristics of the defendant." This ensures "that the punishment will suit not merely the offense but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (citation omitted). Just as it is necessary for the Court to understand "what set a defendant upon [an] illegal course," *United States v. Blake*, 89 F. Supp. 2d 328 at 332, (E.D.N.Y. March 15, 2000) "a court's duty is always to sentence the defendant as [s]he stands before the court on the day of sentencing." *Pepper v. United States*, 562 U.S. 476, 492 (2011) (*citing United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (per curiam)). Put differently, courts should utilize the "most up-to-date picture" of a defendant's "history and characteristics." *Pepper*, 562 U.S. at 492. For example, in *Pepper*, a defendant was convicted of narcotics trafficking, sentenced, and later resentenced as a result of other proceedings. By the time of his resentencing, the defendant "had been drug free for nearly five years, had attended college and achieved high grades, was a top employee at his job slated for a promotion, had reestablished a relationship with his father, and was married and supporting his wife's daughter." *Pepper*, 562 U.S. at 492. The Supreme Court emphasized that the District Court should have applied the § 3553(a) factors to the man standing before it on resentencing, rather than ending the analysis of his "history and characteristics" at the time of the first sentencing. *Id.*; *United States v. Gonzales*, 163 F. Supp. 3d 1078, 1126 (D.N.M.), aff'd, 844 F.3d 929 (10th Cir. 2016) ("a court may consider 'post offense rehabilitative efforts' in deciding whether to grant" a variance); *United States v. Rutherford*, 323 F. Supp. 2d 911, 914 (E.D. Wis. 2004).

Consistent with this principle, courts have recognized repeatedly that in deciding whether to depart downward a sentencing court may consider any presentence rehabilitation that

7

a defendant has demonstrated, as well as, the likelihood that supervision rather than lengthy prison will facilitate a defendant's future rehabilitation.

As stated, for almost three years after the offense conduct in this case Amanda lived a productive life without incident in the community. When it was time for her to accept responsibility for her crime, she appropriately did so and continued modeling prosocial behavior while in custody. Ms. Trull submits that the United States Sentencing Guidelines allow a downward departure based on unidentified circumstances in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determine the appropriate sentence. U.S.S.G. § 5K2.0(a)(2)(B). Ms. Trull submits that her lengthy post offense rehabilitation presents this circumstance. However, should this Court determine that a downward departure is not appropriate, it can still consider the information presented above for fashioning a non-guidelines sentence under 18 U.S.C. § 3553(a).

### III. THE NEED FOR THE SENTENCE IMPOSED TO PROMOTE CERTAIN STATUTORY OBJECTIVES

The Court must look to the statutory sentencing factors set out in 18 U.S.C. §3553 to fashion a sentence that is sufficient by no greater than necessary for Ms. Trull's individual case.

*(A) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) and (C) afford adequate deterrence to criminal conduct and to protect the public and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

The question before this court is what purpose will be achieved by further lengthy incarceration of Ms. Trull. She is a non-violent offender with one prior misdemeanor conviction, has family support, and has a proven potential for rehabilitation in a community setting.

Ms. Trull herself has shown respect for the law through her actions since the time of her arrest. A sentence of 30 months of incarceration for someone with no prior felony convictions

8

Case 1:20-cr-00060-MR-WCM   Document 26   Filed 10/25/21   Page 8 of 11

and whom has never been incarcerated is substantial. Additionally, for the rest of her life, Ms. Trull will have to live with the collateral consequences of a felony conviction on her record. There are nationwide nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, or disadvantages on convicted felons. Not only is a convicted felon's right to vote taken and employment made more difficult, but a felony conviction is a bar to types of licensing (a multitude of occupational licensing laws implicitly exclude applicants from everything from working at bowling alleys and movie theaters to HVAC installers). It is a bar to participation in federal benefits (such as public housing, food stamp programs, and educational loans), and participation in labor organizations. For someone like Mr. Trull, with no prior felonies, coupling this new reality with an additional lengthy term of imprisonment is not necessary to reflect the seriousness of the offense.

Section 3553(a)(2)(B)&(2)(C) address issues of general and specific deterrence, or protecting the community from future crimes. Ms. Trull is an extremely low risk of reoffending and does not present a danger to her community. Her post offense conduct sheds light on the likelihood she will engage in future criminal conduct. *See United States v. Gall*, 552 U.S. 38 at 59 (2007) ("Gall's self motivated rehabilitation…lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts"). According to a recently released report by the United States Sentencing Commission, age and criminal history are consistently strong indicators of recidivism. Recidivism rates steadily decline with age, with young offenders (under 21) having the highest recidivism rates.[1] Additionally, that offenders with more extensive criminal histories had higher rearrest rates. Ms. Trull's age, consistent employment, lack of prior

---

[1] *See* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf

9

involvement in the criminal justice system, and complete adherence with conditions of (state) pretrial supervision are all factors that weigh against her likelihood to commit a future crime.

In regard to general deterrence, Ms. Trull has pled to a felony and will receive a sentence of incarceration followed by supervision. The certainty of her punishment will send a message to the community that the type of crime she committed has severe consequences. Certainty of punishment is generally considered to be more important than the severity of that punishment. Indeed, studies suggest that the deterrent effect of certainty is far stronger than that of severity.[2]

Finally, in consideration of to provide Ms. Trull with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, Ms. Trull has proven that her rehabilitative needs may be appropriately met in the community. Additionally, conditions of supervised release may address any ongoing concerns regarding her mental health or substance abuse needs.

## **CONCLUSION**

Ms. Trull has pled guilty, accepted responsibility for her actions and anticipates a substantial punishment. However, her personal characteristics and post offense rehabilitation weighs against future recidivism and the need for prolonged incarceration.

For the foregoing reasons, Ms. Trull respectfully requests that the Court consider all the facts and circumstances of his case, along with the advisory guidelines and the statutory factors enumerated in 18 U.S.C. § 3553(a), grant her a variance or departure, and sentence her to 30 months of incarceration followed by supervised release.

---

[2] Steven Durlauf and Daniel Nagin, "Imprisonment and Crime: Can Both Be Reduced?" Criminology and Public Policy 10, no. 10 (2011); Raymond Paternoster, "How Much Do We Really Know About Criminal Deterrence," Journal of Criminal Law and Criminology 100, no. 765 (2010).

Dated: October 25, 2021

Respectfully submitted:

s/ Mary Ellen Coleman
Mary Ellen Coleman
NC Bar 45313
Assistant Federal Public Defender
Federal Public Defender for the
Western District of North Carolina
1 Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992 Phone
(828) 232-5575 Fax
Mary_Ellen_Coleman@fd.org